UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALBERT MEDINA,<br><br>　　　　　　　　　Plaintiff,<br>v.<br>NEVADA DEPARTMENT OF<br>CORRECTIONS DIRECTOR, *et al.*,<br>　　　　　　　　　Defendants. | Case No. 3:21-cv-00001-MMD-CSD<br><br>ORDER DENYING MOTION FOR RESTRAINING ORDER AND EXTENDING DEADLINE TO FILE AMENDED COMPLAINT<br><br>(ECF No. 39) |

*Pro se* plaintiff Albert Medina brings this civil-rights lawsuit to redress constitutional violations he allegedly suffered while incarcerated at Ely State Prison ("ESP"). (ECF No. 35.) On December 7, 2022, the Court screened Medina's Second Amended Complaint ("SAC"), dismissing one claim with leave to amend by January 5, 2023, and dismissing the others with prejudice ("Screening Order"). (ECF No. 37.) That deadline has passed, and Medina has not filed an amended complaint or sought to extend the deadline to do so. Instead, Medina refused delivery of the Screening Order. (ECF No. 38.) And he later filed a motion seeking a temporary restraining order ("TRO") requiring the law librarian to stop having mail from the Court delivered by prisoners. (ECF No. 39.)

The Court denies the motion for a TRO because it is not meritorious. But the Court will extend the deadline for Medina to file a third amended complaint consistent with the Screening Order. And the Court will send Medina one-time paper courtesy copies of this order and the Screening Order via U.S. Mail.

**I.    LEGAL STANDARD**

Restraining orders and preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The legal standard for obtaining a temporary restraining order and the legal standard for

obtaining a preliminary injunction are "substantially identical." *See Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter*, 555 U.S. at 20. The Supreme Court clarified the standard for these forms of equitable relief in *Winter v. Natural resources Defense Council, Inc.*, instructing that the plaintiff "must establish that [he] is likely to succeed on the merits, that [he] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [his] favor, and that an injunction [or restraining order] is in the public interest." 555 U.S. at 20. The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied.'" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

A plaintiff who seeks a mandatory injunction—one that goes beyond simply maintaining the status quo during litigation—bears a "doubly demanding" burden: "[he] must establish that the law and facts clearly favor [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). The Ninth Circuit has cautioned that mandatory injunctions are "particularly disfavored" and "should not issue in doubtful cases." *Id.* (internal quotations omitted). The Prison Litigation Reform Act ("PLRA") similarly instructs that any restraining order or preliminary injunction granted with respect to prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Finally, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) ("*Pacific Radiation*"). "This requires a sufficient nexus between the claims raised in a motion for

injunctive relief and the claims in the underlying complaint itself." *Id.* The necessary connection is satisfied "where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

## II. DISCUSSION

Medina argues that around November 11, 2022, a prisoner who identified himself as "Country" handed Medina a copy of his complaint that the Court emailed to the prison. (ECF No. 39 at 1-2.) Medina asked how the prisoner obtained his complaint. (*Id.* at 2.) The prisoner responded that Law Library Supervisor Ms. Garcia instructed him to deliver it to Medina. (*Id.*) Medina wrote Garcia complaining that it wasn't proper to have prisoners deliver "legal mail from the federal courts." (*Id.*)

When Garcia did not respond, Medina filed a grievance about the incident. (*Id.*) Caseworker Smith denied the grievance on procedural grounds for failing to attach a claim form and handed Garcia's response. (*Id.* at 3.) Around December 12, 2022, Garcia had another prisoner deliver more mail from the Court to him. (*Id.*) Medina refused to accept the mail because the prisoner delivering it was "curt" and would not let Medina count the pages before signing for it. (*Id.* at 3-4.) Medina filed a grievance about this incident. (*Id.* at 4.)

Medina's SAC sought to bring claims under the Prison Rape Elimination Act ("PREA"), Fourth Amendment, and Eighth Amendment for visual strip searches that were conducted during routine cell inspections over a four-month period. (ECF No. 35.) In screening the SAC, the Court dismissed Medina's claims under the PREA and Eighth Amendment with prejudice because amendment would be futile. (ECF No. 37 at 4-6.) But the Court granted Medina leave to amend to attempt to replead his Fourth Amendment claim by alleging additional true facts to show that the strip searches were excessive, vindictive, harassing, or unrelated to any legitimate penological interest. (*Id.* at 5-6.) For example, the Court gave Medina leave to plead true facts about his custody level during

the searches, facts suggesting that he did not have an opportunity to obtain contraband or a weapon before or between the searches, if other prisoners were also required to strip during these cell searches, how often the searches were conducted, and if his cell afforded sufficient privacy for the searches. (*Id.* at 6.)

Medina's motion for a TRO argues that having prisoners deliver legal mail violates the Nevada Department of Correction's administrative regulations and HDSP's operating procedures, but he does not identify which regulation or procedure this violates. Medina also argues that Garcia has directed prisoners to deliver Medina his mail from the Court. It is not clear if this mail has been delivered to Medina in an envelope, a sealed envelope, or bare printed pages. But in any event, like the claims in *Devose v. Herrington*, these are "new assertions of misconduct" that might support different claims against new defendants, but they do not support Medina's request for a restraining order because they are "entirely unrelated to the conduct asserted in the underlying complaint." *Pacific Radiation*, 810 F.3d at 636 (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). Moreover, to the extent that Medina believes the Court's mail to him constitutes "legal mail," he is mistaken. The Ninth Circuit has explained that "[m]ail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998).

The Court denies the motion for a TRO because it seeks relief for new acts of misconduct that fall outside the corners of the SAC and the narrow leave to amend that the Court has granted Medina. If Medina wishes to pursue a claim about his mail needs, he must file a complaint under a new case number and either pay the $402 filing fee or properly apply to proceed *in forma pauperis*. But because it appears that Medina refused delivery of the Screening Order under the mistaken belief that the Court's mail to him constitutes "legal mail," the Court will extend the deadline for Medina to file an amended complaint consistent with the Screening Order. And the Court will send Medina one-time paper courtesy copies of this order and the Screening Order via U.S. Mail.

### III. CONCLUSION

It is therefore ordered that the motion for a temporary restraining order (ECF No. 39) is denied.

It is further ordered that the deadline for Plaintiff Albert Medina to file a third amended complaint consistent with the Court's December 7, 2022, screening order is extended to February 22, 2023.

It is further ordered that this action will be subject to dismissal with prejudice and for failure to state a claim if Plaintiff Medina fails to timely file a third amended complaint.

The Clerk of the Court is directed to: (1) serve this order on Plaintiff Medina at the address listed for him with the Court in the ordinary course; and (2) send Plaintiff Medina courtesy paper copies of this order and the Court's December 7, 2022, screening order and attachments (ECF Nos. 37, 37-1, 37-2) via U.S. mail, first class.

DATED THIS 23rd Day of January 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE